**Herman George KAISER, Plaintiff In Error,**

v.

**Albert FADEM, Sam Fadem, and Rose Fadem, Co-partners, d/b/a Fadem Pipe & Supply Co., Defendants in Error.**

No. 35843.

Supreme Court of Oklahoma.

Feb. 1, 1955.

Rehearing Denied March 1, 1955.

Rosenstein & Fist, Philip N. Landa and Aaron Mesirow, Tulsa, for plaintiff in error.

Samuel A. Boorstin and William E. Franklin, Tulsa, for defendants in error.

BLACKBIRD, Justice.

At all times material to this controversy defendants in error were engaged, with headquarters at Tulsa, Oklahoma, in buying and selling oil field equipment, dismantling oil leases and selling property used in the oil business. As plaintiffs, they obtained a verdict and judgment against plaintiff in error, another Tulsa dealer, as defendant, for $5,000 as their broker's commission on the sale of a gasoline plant at Depew, Oklahoma, which said defendant and his associates purchased from one, M. F. Powers. From said judgment, said defendant has perfected the present appeal. Our con-

tinued reference to the parties will be by their trial court designations.

According to the undisputed facts, plaintiffs first learned from Mr. Powers that the Depew plant was for sale at a price of $125,000 in March or April, 1950. Thereafter, the plaintiff company commenced its efforts to effect a sale of the property, and in the course of contacting parties who might be interested in such a purchase, contacted a Mr. Neuwald, who is defendant's brother-in-law and has been associated with him in his business for several years. Defendant was at that time, the early part of August, 1950, on a trip to Germany, but according to plaintiffs' testimony, defendant, with whom plaintiffs had had previous amicable dealings, told plaintiffs before he left on said trip, that if any prospective deals arose during his absence, to submit them to Neuwald, and further stated: " * * any deal * * * he would make with you, I will back * * * up 100%." Thereafter, plaintiff, Albert Fadem, made an appointment with Mr. Neuwald to take him to Depew and inspect the plant, but before leaving on said inspection trip, Neuwald, according to Fadem, telephoned him and asked if it would be satisfactory if a partner was taken into the deal, and when Fadem inquired as to the identity of such proposed partner, Neuwald told him that it didn't make any difference who the partner was, that "you will be taken care of for your commission, whoever we take out". The next morning, when the same Albert Fadem picked up Mr. Neuwald in his automobile to go see the Depew plant, Neuwald had him also pick up a Mr. A. D. Eichenberg, to accompany them, and it was then that Fadem learned Eichenberg was the prospective partner Neuwald had referred to in their telephone conversation the previous day.

After the three had traveled in Albert Fadem's car to Depew where Neuwald and Eichenberg inspected and made an inventory or memorandum notes of the extent and character of the used pipe and other property involved in the proposed sale, the three returned to Tulsa. Neuwald then told Albert Fadem that he would submit "the deal" to defendant upon his return from Europe the next week, and that plaintiffs should then come see him. Pursuant to this arrangement, Albert Fadem and his brother, plaintiff Sam Fadem, talked to defendant in his Tulsa office a few days later and, after discussing the proposed plant sale in the light of the information his agent, Neuwald, and plaintiffs furnished him, defendant began to discuss with the Fadems what they wanted out of the deal. After a discussion between the three as to whether plaintiffs would receive for their services in the matter, an interest in the property, or a commission, plaintiffs agreed to take a $5,000 commission instead of an interest, and, according to the Fadem brothers' testimony, defendant indicated that would be satisfactory with him, but announced that he would not be interested in a purchase of the property at a price in excess of $93,000. The Fadems replied that it could not be purchased for less than $125,000, but, according to their testimony, the defendant further stated: "If I ever buy the deal, I will pay the commission." With the above indication that defendant would not pay as high a price as Powers was asking for the property, the Fadems left defendant's office and never again discussed it at length with him, but, after they learned, approximately eight months later, that the defendant, together with Eichenberg and two other parties, Degen Pipe & Supply Company and Bankoff Pipe & Supply Company, had purchased the plant directly from Powers, along with 80 acres of land and some buildings thereon, not included in the original offering, plaintiffs commenced this action.

In attempting to show, under Proposition I, that the trial court erred in overruling their demurrer to plaintiffs' evidence and motion for a directed verdict, defendant's counsel first argues that to be entitled to a commission, plaintiffs must have been employed as brokers, while the evidence shows that they were not. They further say that even if plaintiffs had originally been employed by Powers, owner of the plant, as brokers, the evidence shows that Powers subsequently withdrew said property from the market. They also say that defendant's acquisition of a one-fourth interest in, the

plant (along with Eichenberg, Degen Pipe & Supply Company, and Bankoff Pipe & Supply Company) was not the result of any efforts or activities of plaintiffs. They also point to evidence indicating that Harry Degen of Degen Pipe & Supply Company, was the moving force causing the deal to be finally made, that Degen learned of the availability of the plant directly from Powers, or through sources independent of the plaintiffs, and that Degen was really the man who "worked up" the deal, as it finally went through. Counsel seek to infer from the evidence that defendant in reality purchased his one-fourth interest from Degen after Degen had closed the deal with Powers, or, at least that defendant was able to be a partner in the transaction only through Degen's consent. They also attempt to show that the deal defendant bought "into" not only comprises more property than had originally been offered him through plaintiffs, but that the purchase price, though the same figure, was in reality cheaper than the one quoted by plaintiffs for the additional reason that during the approximate 8 months which intervened between the time they originally apprised defendant of the availability of the plant, both the demand, and the price for used pipe to be salvaged therefrom, had increased. We think all such argument has little relevancy to the situation here presented; nor do the rules of law and decisions cited thereunder apply here. This is not a case where a broker who has been employed by the owner of property is suing him for a regular broker's commission, as such. It is a case where plaintiffs are suing upon an oral contract entered into with a prospective purchaser to pay them a fee or commission in the event of his purchase of the property. It is immaterial in this kind of a case whether the sum sued for is a broker's commission in the strict sense of the word, or whether it is merely a fee promised to an agent or middle-man. Nor does it make any difference that plaintiffs were employed originally by neither the owners nor any prospective purchaser of the plant.

■ The services plaintiffs had already rendered defendant in bringing to his attention the availability of the plant for purchase and in showing it to him, through his agent, Neuwald, constitutes, in this jurisdiction, a sufficient consideration for a subsequent valid and binding agreement on his part to pay them a fee if he purchased the property. See 15 O.S.1941, (now 1951), § 107, and the citations appearing in Kennedy v. Marshall, 195 Okl. 617, 160 P.2d 397. Under the modern trend of authority followed in this State and in line with the cited statute " * * * a moral obligation is sufficient to support an executory promise where the promisor has originally received from promisee something of value in the form of a pecuniary or material benefit, under such circumstances as to create a moral obligation on the part of the promisor to pay for what he received, even though there was no antecedent or contemporaneous promise or request, and no legal liability at any time prior to the subsequent express promise." See Annotations, 8 A.L.R.2d 787, 798. There can be no question but that the defendant was under a moral obligation to compensate plaintiffs for their services in showing the Depew gasoline plant to his agent Neuwald and in otherwise making defendant acquainted with the availability of said plant for purchase, its price, extent and value, especially when the undisputed evidence strongly indicates that such services were rendered with the intention and expectation of both parties to the controversy, that they would be paid for it. See Old American Life Ins. Co. v. Biggers, 10 Cir., 172 F.2d 495, 8 A.L.R.2d 781. We think that when defendant promised to pay $5,000 for these services if he bought the plant, he himself recognized their value; and the fact that they were of ultimate benefit to him, is indicated by the fact that when Harry Degen approached him about buying it almost 8 months later, defendant was already acquainted with the property and had a degree of familiarity with its prospects, and invested in it without having to go to Depew to inspect it, when Degen and Bankoff went.

■ We think the most relevant and serious question raised by defendant is the one in his argument No. 7, under Proposition I, wherein his counsel refers to the

testimony that he promised to pay plaintiffs a $5,000 commission only if *"I* buy the deal", and they argue that since defendant did not purchase the entire property by himself, but only with three partners, each of whom put up one-fourth of the price, that the condition of defendant's said promise never occurred. Whether or not in the above described conference between the defendant and plaintiffs, Albert and Sam Fadem, it was intended and understood by those present that if defendant bought *or bought "into"* the deal he would pay the commission, was a question for the jury under the evidence in this case. That body has decided it adversely to the defendants; and we believe there was sufficient evidence of the parties' contemplation that the deal entail the investment of too much capital to be undertaken by any one individual buyer of those contacted, and that if the defendant undertook it, he would have one or more partners, to justify the jury's conclusion from the evidence as a whole and the reasonable inferences to be drawn therefrom, that when defendant said "if *I* buy the deal" it was intended and understood as if he had said: "if I buy the deal with partners" or "if I buy a substantial interest in the property." At least this is the view most favorable to plaintiffs, that the trial court must have adopted in ruling upon the demurrer to plaintiffs' evidence and motion for a directed verdict. See Tulsa Fruit Co. v. Lucas, 208 Okl. 166, 254 P.2d 788; Adams v. Stanolind Oil & Gas Co., 187 Okl. 478, 103 P.2d 526.

Under his Proposition II, defendant complains of the trial judge's refusal to give his Requested Instruction No. VII, which would have told the jury that if it found that the "procuring cause" of defendant's purchase of an interest in the plant "was due to the efforts of persons other than plaintiffs, the verdict must be for the defendant." The trial court committed no error in refusing this instruction because in the enforcement of the particular oral contract in question, "procuring cause" was not an important or necessary element.

Under his Proposition III, defendant complains of the trial judge's alleged error in giving Instructions Nos. 2, 3, 4, 5, 6 and 11

"relating to the agency and authority of Neuwald * * *". We have carefully examined all of these instructions and think some of them are more favorable to the defendant than he was entitled to, and placed a greater burden of proof upon plaintiffs than was rightfully theirs in view of what we have herein said concerning the theory upon which they were entitled to prevail. Although, from our review of the evidence there may be some question as to Neuwald's authority to make an agreement binding defendant to purchase plant such as the one involved or to have obligated him to pay plaintiffs' commission, such proof was not necessary. The defendant personally made such an agreement, and it was upon it that plaintiffs were entitled to recover. However, we do think the evidence of Neuwald's authority sufficient to justify a reasonable inference by the jury that he had authority to arrange with plaintiffs that defendant might take partners in with him upon any purchase of the plant he undertook.

In various parts of defendant's argument his counsel refers to certain allegations of fraud in plaintiffs' petition and to references made to these in the court's instructions. Then they refer to the character of proof necessary to establish fraud, but fraud was not an element in this case, and proof of it was not necessary to plaintiffs' recovery on the oral contract involved. The principal, and perhaps the only relevant purpose of the evidence indicating the particular manner in which the four parties accomplished the purchase of the gasoline plant was to show that it was done in a manner to keep plaintiffs from readily ascertaining that defendant was involved and had reneged on his promise, and thus indicate his recognition that in becoming a party to the purchase, he was breaching his contract with plaintiffs. The jury was warranted in considering all of these circumstances on the question of defendant's meaning when he promised to pay plaintiffs the specified commission if *"I* ever buy the deal", but further than that, we see little significance or relevancy in such evidence.

We have carefully examined all of the instructions and have concluded that though

there may be some that are not strictly applicable to the case, as a whole, they fairly stated the legal principles applicable to the main issues of the case and were not sufficiently misleading or inapplicable to constitute cause for reversal. See St. Louis-San Francisco Ry. Co. v. Withers, Okl., 270 P. 2d 341, and cases cited therein.

As none of the assignments of error argued by defendant constitute sufficient cause for reversal, the judgment of the trial court is hereby affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, HALLEY and JACKSON, JJ., concur.