**EQUITY BENEFIT LIFE INSURANCE COMPANY, an Oklahoma Corporation, Appellant,**

v.

**Richard O. TRENT, Appellee.**

**No. 49464.**

Supreme Court of Oklahoma.

July 5, 1977.

---

Claude S. Woody, Jr., Oklahoma City, for appellant.

Jopling, Blankenship & McKee by R. C. Jopling, Jr., S. M. Anderson, Oklahoma City, for appellee.

BARNES, Justice:

This is an action for recovery of damages for breach of a written contract filed by Appellee, Richard O. Trent (Trent), against Appellant, Equity Benefit Life Insurance Company (Equity). The case was tried to the court and judgment rendered for Trent. Equity brings this appeal.

The testimony is very conflicting. Trent is a broker of businesses, with headquarters in Oklahoma City, Oklahoma, whose livelihood comes from bringing seller and buyer together in transactions by which one party sells and the other party purchases a going business. Trent holds himself out as a broker of companies involved in life, fire, and casualty insurance business, and has been so engaged for the previous eight years. Equity is a life insurance company engaged in selling life insurance within Oklahoma, with headquarters in Blackwell, Oklahoma, and offices in Oklahoma City.

On June 12, 1974, Trent was approached at his Oklahoma City office by Equity's president, F. G. Armstrong (Armstrong), the two men not having met previously. Armstrong informed Trent that he was interested in acquiring an insurance company. At that time Trent told Armstrong he would look for an insurance company for him provided he would sign his fee arrangement agreement. The following agreement was executed by the parties:

"IF YOU ARE AN INTERESTED BUYER, please sign and return the following Agreement, to qualify for receipt of full disclosure of any company listed with our organization.

### AGREEMENT

TO: RICHARD O. TRENT      June 12, 1974
                                           Date

WE ARE AGREEABLE to paying you and/or your associates a fee based on the purchase price or other consideration for any company, agency, distributorship, or other business entity or organization, whether expressed in cash or stock or any other remuneration; whether payable at closing of transaction or on extended payout; and regardless of which party pays the remuneration, which you are instrumental in helping us purchase, sell, or acquire any substantial interest in such a company which

we agree to accept. Of the purchase price, the fee to you and/or your associates would be:

| | | |
|---|---|---|
| 5% | first | $1,000,000 |
| 4% | second | $1,000,000 |
| 3% | third | $1,000,000 |
| 2% | fourth | $1,000,000 |
| 1% | each | $1,000,000 thereafter |

Minimum Finders Fee $5,000

The payment of such a fee shall be payable in cash or other marketable consideration as agreed upon by both parties in writing at the time the transaction is agreed upon.

Exclude the following companies as we are in contact with them. Please List.

/s/ Richard O. Trent         /s/ F. G. Armstrong
Agreed to: Richard O. Trent    Signature of Authorized
                                        Person

                                        Witness

☐ I am interested in receiving full disclosure statement for company Code Number ☐

☐ I am interested in selling

     Please contact me at this address

        Please type or print

Name of company Equity Mtr. Co.
Name of authorized person F. G. Armstrong
Address P.O. Box 789    City Blackwell    State Okla
Zip _____ Phone 363 3952

FOR FURTHER INFORMATION call or write Richard O. Trent & Associates, Inc., 4040 North Lincoln, Oklahoma City, Oklahoma 73105 (405) 424–3366"

Trent testified that at the time the agreement was entered into he identified Circle Insurance Company (Circle), a casualty insurance company located in Oklahoma City, Oklahoma, as a prospect, furnished Armstrong with financial information pertaining to Circle, and thereafter continued to give Armstrong additional information by telephone as to the price at which he felt Circle could be obtained, as well as information on about five other companies.

Armstrong, on the other hand, testified it was not until one week after the agreement was signed that Trent mentioned Circle as a prospect and mailed Armstrong the 1973 Annual Financial Statement of Circle and that of an Arkansas-based insurance company.

Armstrong admitted Trent made several telephone calls to him in the months following the execution of the agreement for the purpose of presenting information concerning other possible acquisitions. Trent testified these calls were made on a bimonthly

basis and that on each occasion he mentioned Circle to Armstrong in a casual way, but was advised there was still no interest since the asking price was too high to interest Armstrong.

According to Trent, the original asking price of Circle was between $900,000 and $1,000,000, which Armstrong thought unreasonable. Trent testified contact was maintained on the subject of Circle by telephone until February 4th or 5th, 1975. At trial Trent produced written memorandums of these telephone conversations and recalled the dates of same.

Trent testified that around February 5, 1975, Mr. Woody, the principal officer of Circle, advised him the asking price of Circle was being reduced. Trent said he then communicated this to Armstrong and that Armstrong felt it looked like a "better deal now" and that he would call Trent the next time he was in Oklahoma City.

Contra to this testimony is that of Armstrong, who said when Trent disclosed the purchase price of Circle to be $335,000 in June, 1974, he informed Trent immediately his companies had no interest in acquiring Circle because the price was unreasonable. Armstrong said a $900,000 figure was never mentioned. Armstrong's testimony reflects he does not remember Trent's mention of Circle in telephone calls subsequent to June, 1974, nor any discussion with Trent of the Circle organization after Armstrong returned to Trent the financial statements covering Circle in June, 1974, until the telephone conference in February, 1975, when Trent called to inform him that the purchase price of Circle was substantially changed. At that time Armstrong's response was, "Yes, I have the statement on my desk now," and indicated to Trent that Circle was being submitted to him by someone other than Trent.

The record reflects that in December, 1974, one Kenneth Hicks (Hicks), manager of the branch office of Ranger Insurance Company (Ranger), was approached by the management of Circle to determine if Ranger might have some interest in acquiring Circle. Hicks presented detailed information to his home office in Houston, Texas, and within a short time advised the management of Circle that there was no interest on the part of Ranger. However, Hicks informed Circle that he would present the company for sale to other potential purchasers if Circle would give him a broker's listing. This was done by verbal agreement.

Hicks then contacted Mr. Lonnie Farmer, who had recently negotiated for the purchase of another casualty company, to see if Farmer was interested. Farmer informed Hicks that he and his associates were not interested, but that Equity Benefit Life Insurance Company might be. Farmer then contacted Armstrong, Equity's president, regarding Circle. In January, 1975, Hicks presented Circle to Armstrong with a comprehensive analysis of the history and financial value of the company, including financial statements not previously seen by Armstrong. Hicks also brought Armstrong to Oklahoma City and introduced him to the management of Circle. Over a period of approximately three months, negotiations continued with numerous trips being made to Blackwell, Oklahoma, by Hicks in a continuing effort to bring the parties to terms. Sale of Circle to Equity was consummated April 1, 1975, for the sum of $170,000, contingent upon Hicks securing a suitable manager for Circle. Hicks did secure said manager, closed the sale of the company to Equity, and received a $10,000 brokerage fee for his services.

Trent's testimony reflects he communicated to Armstrong that the price of Circle had been reduced around February 5, 1975, but could not remember telling Armstrong that Circle could be bought for $170,000. Trent stated:

"I may have said it could be from anywhere from one hundred and seventy to two hundred thousand. That may have been the way I put it." (Tr. 17–18)

Armstrong testified that when he first went to see Trent to buy an insurance company there was merely a rumor that Circle was for sale, that the grapevine was it might be for sale. Armstrong also testified

that Trent accompanied him to initial meetings with the management of other prospective companies, but was never introduced by Trent to owners or management of Circle.

Upon learning of the sale of Circle to Equity, Trent brought an action against Equity for breach of contract, claiming in his petition that he did do and perform all acts and things required of him by their contract; that he consulted with and advised Equity's president Armstrong and gave him all information previously acquired by him with regard to said insurance company; that he was the procuring cause of the contract; and that by virtue of the actual purchase consummated the commission provided for in the contract was earned by him.

The case was tried to the court and judgment rendered for Trent for the sum of $8,500 (5% of the $170,000 purchase price as per the agreement), together with interest thereon at the rate of 10% per annum from the date of judgment until paid, and for all of Trent's costs. Trent had requested attorneys fees, but the same were not allowed by the Trial Court and are not an issue on this appeal.

Equity urges error by the Trial Court in finding that Trent was the procuring cause of the transaction upon which the contractual claim is founded, in finding that the written contract was supported by valuable consideration, and in its interpretation of the written contract.

■ Trent urges the Trial Court's judgment should be sustained because the contract in question is a Finder's Fee or Business Opportunity contract which is enforceable in Oklahoma and because Appellee Trent had fully performed all acts required under the contract. Trent relies entirely on *Kaiser v. Fadem,* 280 P.2d 728 (Okl.1955), which apparently was the basis for the Trial Court's judgment. In *Kaiser, supra,* the Court said at page 731:

"The services plaintiffs had already rendered defendant in bringing to his attention the availability of the plant for purchase and in showing it to him, through his agent, Neuwald, constitutes, in this jurisdiction, a sufficient consideration for a subsequent valid and binding agreement on his part to pay them a fee if he purchased the property. * * *"

Further, while the general rule is that a finder or business opportunity broker must be the procuring cause of the subsequent sale and purchase, this Court said in *Kaiser, supra,* at page 732:

"Under his Proposition II, defendant complains of the trial judge's refusal to give his Requested Instruction No. VII, which would have told the jury that if it found that the 'procuring cause' of the defendant's purchase of an interest in the plant 'was due to the efforts of persons other than plaintiffs, the verdict must be for the defendant.' *The trial court committed no error in refusing this instruction because in the enforcement of the particular oral contract in question, 'procuring cause' was not an important or necessary element."* (Emphasis added)

It is to be noted the contract in *Kaiser, supra,* was oral, whereas the contract in the instant case was written, thus presenting even stronger support for a binding agreement. Furthermore, the contract herein obligated Equity to pay Trent if the latter was " * * * instrumental in helping us (Equity) purchase * * * or acquire * * * a company * * *." It is to be noted that the term "instrumental" as used in the contract does not necessarily mean "primary or procuring cause." "Instrumental" is defined by Black's Law Dictionary, 3d Ed., as "serviceable, helpful." We think Trent complied with and fulfilled his obligation by (1) identifying the company subsequently acquired; (2) by furnishing all financial information of the company which he had; and (3) by continuing to advise Equity of new information as it came to him.

■ A so-called "Finder's Fee" contract has been defined as an arrangement by which an intermediary finds, introduces, and brings together parties to a business opportunity, leaving the ultimate negotiation and consummation of the business

transaction to the principals. *Annotation: Validity, Construction, and Enforcement of Business Opportunities or "Finder's Fee" Contract,* 24 A.L.R.3d 1160.

▇▇▇ Under such a "Finder's Fee Contract," sufficient consideration exists in bringing to the buyer's attention the availability of the item the buyer desires to purchase, and the time for performance of such a contract, in the absence of a stated term, is construed to be a reasonable one. 15 O.S.1971, § 173. It is inherent in the Trial Court's judgment in favor of Trent that the Trial Court found the period between execution of the contract, on June 12, 1974, and identification by Trent to Equity of Circle and the subsequent purchase by Equity of Circle nine months later, on April 1, 1975, was reasonable under the facts and circumstances. We agree.

We conclude *Kaiser v. Fadem, supra,* is dispositive of the issue herein, and for this reason find it unnecessary to deal with Appellant's three propositions. As noted in *Kaiser:*

> " * * * There can be no question but that the defendant was under a moral obligation to compensate plaintiffs for their services in showing the Depew gasoline plant to his agent Neuwald and in otherwise making defendant acquainted with the availability of said plant for purchase, its price, extent and value, especially when the undisputed evidence strongly indicates that such services were rendered with the intention and expectation of both parties to the controversy, that they would be paid for it. * * * "

From our review, we agree the Trial Court's conclusion is supported by the record and transcript.

AFFIRMED.

HODGES, C. J., LAVENDER, V. C. J., and WILLIAMS, IRWIN, BERRY and DOOLIN, JJ., concur.