**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 16 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PIERRE KNOWLTON,

        Plaintiff-Appellee
        Cross-Appellant,

v.

TELTRUST PHONES, INC., a Utah
corporation,

        Defendant-Appellant
        Cross-Appellee.

No. 97-4154 and 97-4162

---

Appeal from the United States District Court
for the District of Utah
(D.C. No. 95-CV-93)

---

Lincoln W. Hobbs, of Winder & Haslam, P.C., Salt Lake City, Utah, (Gerry B.
Holman of Winder & Haslam, P.C., and Steven E. Swenson and Christie Babalis
of Teltrust, Inc., Salt Lake City, Utah, with him on the briefs) for Appellant.

Erik Strindberg, of Cohne, Rappaport & Segal, P.C., Salt Lake City, Utah, (Ralph
E. Chamness and Brian F. Roberts with him on the brief) for Appellee.

---

Before **BRISCOE, BARRETT,** and **MURPHY,** Circuit Judges.

---

**MURPHY**, Circuit Judge.

A jury found appellant, Teltrust Phones, Inc. ("Teltrust Phones"), liable for the sexual harassment of Ms. Pierre Knowlton, awarding her $75,000 in compensatory damages. On appeal, Teltrust Phones argues that: (1) the district court erred in sanctioning it for failing to comply with a discovery order; (2) there was insufficient evidence to support the jury's finding of a "single employer"; and (3) Teltrust, Inc. and Teltrust Communication Services, Inc. ("TCSI") should not have been included in this suit because they were not named as parties in Knowlton's complaint to the EEOC.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms**.

Appellee Knowlton cross-appeals the district court's grant of a directed verdict dismissing Knowlton's punitive damages claim.[1]  This court **reverses** and **remands**.

## I. BACKGROUND

In September 1992, Knowlton, a sales representative for Teltrust Phones, complained to the management of Teltrust, Inc.[2] that Mark Neihart, her

---

[1]In light of this court's conclusion that Teltrust Phones' appeal fails, Knowlton's cross-appeal asserting abuse of discretion by the district court in denying her motion to amend her complaint to include TCSI and Teltrust, Inc. is moot.

[2]Teltrust Phones and TCSI are subsidiaries of Teltrust, Inc.

supervisor, had sexually harassed her since she was hired in October 1990. Neihart's behavior included constant use of vulgar language, telling sexually explicit jokes, talking about the sexual conduct of the management, making both sexually charged and insulting comments about other female employees, telling Knowlton about the details of his sex life with his wife, discussing the size of his penis, pretending to masturbate in front of Knowlton, and sending messages to Knowlton's pager which read "696969." On the occasions Knowlton's husband sent flowers to her office, Neihart speculated about her husband's infidelity or Knowlton's sexual skills. Neihart also placed in Knowlton's desk a radish cut in the shape of a vagina, garnished with cheese spread.

Neihart also repeatedly propositioned Knowlton, told her about fantasies he had about the two of them, asked her about the clothing she slept and exercised in, and requested that she give him oral sex. His propositions escalated after Knowlton married and they began to affect her work performance. He refused to approve contracts Knowlton had obtained with new clients unless she would agree to perform oral sex, resulting in a number of her contracts not being approved. He also required Knowlton, but not others, to sell phones which generated significantly less in commission.

Upon hearing Knowlton's complaint, Teltrust Inc.'s management transferred Neihart to another position within the company. Fearing continued

interaction with Neihart and retaliation, Knowlton resigned from Teltrust Phones and filed a complaint with the Utah Anti-Discrimination Division/EEOC ("UADD/EEOC"), claiming she was sexually harassed while employed with Teltrust Phones. After receiving a right-to-sue notice from the UADD/EEOC, Knowlton filed a complaint in federal district court against Teltrust Phones.[3] A jury found that Teltrust Phones, TCSI, and Teltrust, Inc. constituted a single employer, and awarded Knowlton $75,000 in compensatory damages.

## II. SANCTION

Approximately three months before trial, Knowlton served upon Teltrust Phones a third set of interrogatories and a Request for Production of Documents.[4] Teltrust Phones did not respond to the interrogatories or file objections to the discovery request in violation of Rules 33(b)(3) and 34(b) of the Federal Rules of

---

[3]Upon stipulation, the parties agreed to have a magistrate judge preside over the trial. *See* 28 U.S.C. § 636(c).

[4]Teltrust Phones argues that this discovery request was served after the discovery deadline. Despite Teltrust Phones' best efforts to obfuscate the issue, however, it appears that the discovery deadline was indeed extended to February or March 1997. Teltrust Phones' statement that "there is no document in the file which reflects the Court's extension of discovery deadlines," is simply unpersuasive in light of the following: during an April 11, 1997, conference about jury instructions, the presiding judge stated that he "had extended [the discovery deadline] and [Knowlton's discovery request] was filed 30 days prior to the cutoff date for discovery"; Teltrust Phones itself served Knowlton with discovery requests in January of 1997; and the Pretrial Order, dated March 18, 1997, stated that "[d]iscovery *is being* completed." (emphasis added).

Civil Procedure.[5]  Consequently, Knowlton filed a motion to compel a week before trial, and Teltrust Phones responded almost exclusively with objections. The district court ordered an immediate hearing and at the hearing granted the motion to compel, warning Teltrust Phones that failure to comply would result in a sanction, consisting of a jury instruction that Teltrust Phones had failed to provide the information and the jury could infer that the evidence would have been unfavorable to Teltrust Phones.

Despite the court's order, Teltrust Phones failed to produce much of the information sought.  In response, Knowlton filed a Motion for Default Judgment, pursuant to Rule 37(b).  Teltrust Phones made numerous arguments about the timing of the discovery request and its effort to comply with the request. Nevertheless, the court ruled that the information provided by Teltrust Phones was unresponsive to both Knowlton's request and the court's order.  The court also concluded, however, that granting Knowlton's motion for default judgment would be too severe a sanction.  Instead, the court instructed the jury as it had warned.  The jury instruction stated the following:

---

[5]Rule 33(b)(3) states that the "party upon whom the interrogatories have been served shall serve a copy of the answers, and objections if any, within 30 days after the service of the interrogatories."  Rule 33(b)(4) further provides: "Any ground [for objection] not stated in a timely objection is waived . . . ."  Rule 34(b) similarly provides: "The party upon whom the request [for production of documents] is served shall serve a written response within 30 days after the service of the request."

Teltrust Phones, Inc., has failed to give Pierre Knowlton evidence within its exclusive control that is relevant and material to the determination of whether [Teltrust Phones], Teltrust, Inc., and [TCSI] constituted a single employer. Therefore, in determining whether the three entities were a single employer and whether to include all three entities' employees in your calculation [of the number of employees], you must presume that the evidence which Teltrust Phones, Inc. would not provide would have weighed against Teltrust Phones, Inc. and in favor of Pierre Knowlton.

Discovery sanctions are reviewed for an abuse of discretion, considering the totality of the circumstances.[6] *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 640, 642 (1976); *Oklahoma Federated Gold & Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 139 (10th Cir. 1994). The district court's discretion is limited by the requirement that the sanction be both "'just'" and "'related to the particular claim which was at issue.'" *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992) (quoting *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)).

---

[6]Deeming the establishment of certain facts under Federal Rules of Civil Procedure 37(b)(2)(A) can be tantamount to a default judgment, which in turn triggers a greater degree of scrutiny. *See, e.g.*, *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992) ("[W]e recognize that dismissal represents an extreme sanction appropriate only in cases of willful misconduct."); *Ingalls Shipbuilding, Inc. v. United States*, 857 F.2d 1448, 1450-51 (Fed. Cir. 1988). The sanction here, however, did not prevent Teltrust Phones from fully presenting its case to the jury. *See Chilcutt v. United States*, 4 F.3d 1313, 1320 (5th Cir. 1993) ("Because the court's ruling did not preclude the Government from presenting its case in chief, the sanction was a far cry from a default judgment.").

Teltrust Phones advances several arguments. First, Teltrust Phones argues that it complied with the court's order when it delivered to Knowlton four consolidated financial reports on April 10, 1997. Relatedly, Teltrust Phones argues that the information sought by Knowlton was cumulative and irrelevant. This court is unable, however, to determine whether the magistrate judge abused his discretion on these bases because Teltrust Phones has failed to provide an adequate record for review. There are no citations to the record and this court can find no evidence in the record of Teltrust Phones' answer to Knowlton's third request for interrogatories, or of the financial statements allegedly provided on April 10, 1997. Teltrust Phones' failure to provide an adequate record on appeal renders review of its compliance with the court's order impossible, and requires that this court disregard these particular challenges to the district court's sanction. *See* 10th Cir. R. 10.3(B) ("When the party asserting an issue fails to provide a record sufficient for considering that issue, the court may decline to consider it."); 10th Cir. R. 30.1(A)(3) ("The court need not remedy any failure of counsel to provide an adequate appendix."); *see also McEwen v. City of Norman*, 926 F.2d 1539, 1550 (10th Cir. 1991) (failure to designate relevant record requires court to hold that appellant did not meet burden of proving that ruling was abuse of discretion).

The same record deficiency dictates the resolution of Teltrust Phones' argument that the information sought by Knowlton had already been provided and was, in any event, publicly available. Teltrust Phones acknowledges only the information sought by Knowlton which related to the directors, officers, and shareholders of the various Teltrust entities, failing to address whether it had answered other questions in Knowlton's third interrogatory, such as the identity of the person to whom Richard Heath, the supervisor of the man who sexually harassed Knowlton, reported during 1992; the person who was responsible for employee relations during 1991 and 1992; and the identity of the entity which employed Knowlton prior to Teltrust Phones' incorporation in June 1991. This information was relevant in determining single-employer status. *See Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362-64 (10th Cir. 1993) (noting information useful in proving interrelation of operations and centralized control of labor relations). Because the record does not contain Teltrust Phones' response to the interrogatories, this court is deprived of an essential tool to assess whether Teltrust Phones indeed complied with the court's order and whether the court's order constituted an abuse of discretion.

Teltrust Phones further argues that Knowlton failed to raise Teltrust Phones' discovery deficiencies in its proposed pretrial order, subsequently adopted by the court on March 31, 1997, in which Knowlton specifically

requested "that the Court specify what, if any, additional discovery will be allowed and when it must be conducted." Teltrust Phones asserts that this failure caused it "to believe there was no need to produce any further financial documents than had already been provided." Teltrust Phones does not explain and this court cannot understand how the language of the pretrial order has any bearing on Teltrust Phones' failure to comply with the court's April 8, 1997, order compelling complete responses to Knowlton's third set of interrogatories.

Finally, Teltrust Phones argues that prior to making a motion to compel discovery, Knowlton failed to file a statement of informal discovery-dispute resolution with the court, a requirement by local rule. *See* Rules of Practice for the District of Utah 204-1(g) (Michie 1996) (currently codified at 37-1(b)). Teltrust Phones, however, did not raise this issue until its post-verdict motion for a new trial. By failing to timely raise the issue to the district court, Teltrust Phones waived the issue below. *See* Fed. R. Civ. P. 50 advisory comm. note, 1991 amend. ("A post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion."); *Anderson v. United Tel. Co. of Kan.*, 933 F.2d 1500, 1503 (10th Cir. 1991). This court will not review issues not timely raised below, except in exceptional circumstances not applicable here. *See Rhine v. Boone*, No. 98-6353, 1999 WL 459312, *1 (10th Cir. July 7, 1999) (citing *Walker v. Mather*, 959 F.2d 894, 896 (10th Cir. 1992)).

This court has no basis to perceive Teltrust Phones' discovery conduct any differently than the magistrate judge did. The sanction levied after warning was both just and tailored to the single-employer claim and did not constitute an abuse of discretion by the district court.

## III. SINGLE-EMPLOYER STATUS

Teltrust Phones argues that insufficient evidence was produced to support the jury's finding of single-employer status between Teltrust Phones, the named defendant in this suit, TCSI, a fellow subsidiary, and their parent corporation, Teltrust, Inc. "When a jury verdict is challenged on appeal, our review is limited to determining whether the record--viewed in the light most favorable to the prevailing party--contains substantial evidence to support the jury's decision." *Thunder Basin Coal Co. v. Southwestern Pub. Serv. Co.*, 104 F.3d 1205, 1212 (10th Cir. 1997) (quotation omitted). Because the jury "has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact," this standard of review is quite deferential to the jury's verdict. *Kitchens v. Bryan County Nat'l Bank*, 825 F.2d 248, 251 (10th Cir.1987).

Review of sufficiency of the evidence necessarily includes consideration of the discovery instruction imposed as a sanction. By instructing the jury that it must *presume* the discovery which Teltrust Phones failed to produce supported a finding of single-employer status, the district court imposed a sanction which stopped short of a default sanction available under Rule 37(b)(2)(A). *See* Fed. R. Civ. P. 37(b)(2)(A) (providing an alternative sanction that the facts "shall be taken to be *established*" in favor of the party seeking discovery (emphasis added)); *see also* Charles Alan Wright, et. al., *Federal Practice & Procedure* § 2289 (2d ed. 1994) ("The court is not limited to the kinds of orders specified in Rule 37(b)(2) . . . ."). For this instruction to be a sanction at all, Knowlton's burden of producing evidence of single-employer status must be deemed satisfied. Because the sanction was not a default, however, the presumption was rebuttable.

The Tenth Circuit has not yet adopted a test for determining when a parent company is liable under Title VII for its subsidiary's discriminatory conduct. *See Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1070 (10th Cir. 1998) (applying but declining to adopt single-employer test); *Frank*, 3 F.3d at 1362 (declining to adopt any one of four tests used by courts in determining when a parent corporation is liable for the acts of its subsidiary). Both parties and the district court, however, assumed the application of the single-employer test, also referred to as the integrated-enterprise test or the true-economic-realities test. *See*

*Lockard*, 162 F.3d at 1069. Consequently, that test, right or wrong, controls this appeal. *See Frank*, 3 F.3d at 1362 ("[W]e today apply the integrated enterprise test because [both parties] concede that this test best applies to the facts of this case."). The single-employer test rests on four factors: (1) interrelation of operations; (2) centralized control over labor relations; (3) common management; and (4) common ownership or financial control. *See id.* at 1362. All four factors, however, are not necessary for single-employer status. Rather, the heart of the inquiry is whether there is an absence of an arm's-length relationship among the companies. *See, e.g.*, *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 996 (6th Cir. 1997); *Lihli Fashions Corp. v. NLRB*, 80 F.3d 743,747 (2d Cir. 1996).

Taking into consideration the presumption of single-employer status, Teltrust Phones' meager efforts to rebut that presumption during trial, and the affirmative evidence offered by Knowlton,[7] this court concludes that the jury's

---

[7]Teltrust Phones has conceded that Teltrust, Inc. wholly owned both subsidiaries, and all three Teltrust companies were governed by the same persons as their officers and members of their board of directors. Interrelation of operations is clear because the three entities shared a building, phone system, reception area, office equipment, accounting department, personnel manager, personnel handbook, and payroll accounts. Moreover, the business of the three entities was addressed in single, common meetings of the board of directors. With regard to the centralization of labor relations, the appropriate inquiry is: "What entity made the final decisions regarding employment matters *related to the person claiming discrimination?*" *See Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1363 (10th Cir. 1993) (quotation omitted) (emphasis added). Lyle Keys and Jerry

determination of single-employer status was overwhelmingly supported by the evidence.[8]

## IV. TELTRUST, INC. AND TCSI AS PARTIES

Teltrust Phones challenges the inclusion of Teltrust, Inc. and TCSI in this suit because neither party was named in the EEOC charge filed by Knowlton. As a general rule, a plaintiff must file a charge against a party with the EEOC before she can sue that party under Title VII. *See* Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1) ("[A] civil action may be brought against the respondent named in the [EEOC] charge . . . by the person claiming to be aggrieved . . . ."); *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991). Nevertheless, a Title VII action may proceed against a defendant not named in the EEOC charge when "there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge." *Johnson*, 931 F.2d at 209; *see also McKinnon v. Kwong Wah Restaurant*, 83 F.3d 498, 505 (1st Cir. 1996); *Sedlacek v. Hach*, 752 F.2d

Romney conducted an investigation, removed Neihart from his position with Teltrust Phones and simultaneously hired him with TCSI, and resolved all other matters related to Knowlton's complaint in their capacity as chairman/CEO and President, respectively, of Teltrust, Inc., the parent corporation. Moreover, the companies shared a single employment manual and human resources manager.

[8]Because this court affirms the jury's finding of single-employer status, jurisdiction under Title VII existed and the issue of whether Teltrust Phones employed 15 or more employees during the relevant time period need not be addressed.

333, 336 (8th Cir. 1985).  This identity-of-interest exception satisfies a Title VII purpose that the defendant have notice of the charge and the EEOC have an opportunity to attempt conciliation.  *See Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1311 (10th Cir. 1980).

Courts typically employ a four-factor test to determine whether an identity of interest exists.[9]  Such an analysis, however, is unnecessary in a case such as this in which this court has upheld the jury's finding that the named and unnamed parties constitute a single-employer.  *Cf. Romero*, 615 F.2d at 1312 ("Depending on the facts, additional factors may be relevant.").  When a court has already determined that the entities are so entwined as to justify holding the parent corporation liable for the subsidiary's actions, it would be anomalous to not also conclude that the parent had sufficient identity of interest to have been notified of the suit.  *See Sedlacek*, 752 F.2d at 336 (holding that because the defendants had been proved to constitute a single employer, "notice to one was notice to the

---

[9]The factors are: (1) whether the role of the unnamed party could have been ascertained at the time of the filing of the EEOC complaint through reasonable effort by the complainant; (2) whether the interests of a named party are so similar to the unnamed party's that it would be unnecessary to include the unnamed party in the EEOC proceedings for the purpose of obtaining voluntary conciliation and compliance; (3) whether the unnamed party's absence from the EEOC proceedings resulted in actual prejudice; and (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.  *See, e.g.,  Cook v. Arrowsmith Shelburne, Inc*., 69 F.3d 1235, 1241-42 (2d Cir. 1995); *Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1312 (10th Cir. 1980).

other"); *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 906 (7th Cir. 1981) (deciding, independent of four-factor test, that given substantial interrelationship of the two entities, "the [unnamed party] knew or should have known of the EEOC charge" and was given an opportunity to participate in conciliation proceedings).

Because Teltrust, Inc., TCSI, and Teltrust Phones constitute a single employer, Knowlton's failure to name Teltrust, Inc. and TCSI in the EEOC charge does not preclude their inclusion in this suit. Both entities were on notice early in the suit that Knowlton sought to prove single-employer status among the various Teltrust entities.[10]

## V. PUNITIVE DAMAGES

---

[10]In his order denying Knowlton's motion to amend her complaint to include Teltrust, Inc. and TCSI, Magistrate Judge Samuel Alba noted that in a January 13, 1993, letter to the UADD/EEOC, Knowlton's counsel had written:

> While it may be, as stated by Teltrust, that Teltrust Phones, Inc. is a subsidiary of Teltrust, Inc. those entities, for the purpose of the Act, are treated as one. It is our understanding that Lyle Keys owns, at least a controlling interest, in Teltrust, Inc. and is directly responsible for the management of both. Further, both entities are located in the same building, share common facilities and equipment and have a common management structure.

Knowlton continued to press for single-employer status throughout discovery and trial, vitiating Teltrust, Inc. and TCSI's claims of lack of notice.

The district court granted Teltrust Phones' motion for directed verdict on punitive damages from the bench on April 11, 1997, holding that Knowlton had failed to make a showing of actual malice or reckless indifference to her federally protected rights. Review of the district court's grant of a motion for judgment as a matter of law is *de novo*, applying the same standard as the district court. *See Pack v. Kmart Corp.*, 166 F.3d 1300, 1303 (10th Cir. 1999). Judgment as a matter of law is appropriate only "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party." Fed. R. Civ. P. 50(a)(1); *see also Davis v. United States Postal Serv.*, 142 F.3d 1334, 1339 (10th Cir. 1998) ("[A] court may grant the motion only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position." (quotation omitted)). We construe the evidence and inferences therefrom in a light most favorable to Knowlton, the nonmoving party. *See Wilson v. Tulsa Junior College*, 164 F.3d 534, 536 (10th Cir. 1998).

The Civil Rights Act of 1991 provides: "A complaining party may recover punitive damages . . . against a respondent . . . if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1); *see also*

*Baty v. Willamette Indus., Inc.*, Nos. 97-3299, -3305, 1999 WL 191184, at *10-11 (10th Cir. Apr. 7, 1999). The plaintiff's burden of proof is a preponderance of the evidence. *See Karnes v. SCI Colo. Funeral Servs., Inc.*, 162 F.3d 1077, 1080-81 (10th Cir. 1998).

The Supreme Court has clarified that the malice or reckless indifference inquiry is directed at the employer's state of mind. *See Kolstad v. American Dental Assoc.*, No. 98-208, 1999 WL 407481, *5-8 (June 22, 1999). Thus, a plaintiff need only prove that her employer discriminated against her "in the face of a perceived risk that its actions will violate federal law." *Id*. at *5. She need not show egregious or outrageous discrimination independent of the employer's state of mind. *See id*. at *5-6. Although this circuit has not yet determined comprehensively what a plaintiff seeking punitive damages must prove in order to show that her employer acted with the requisite mental state, our previous cases are consistent with *Kolstad*'s admonition that malice or reckless indifference relates to the employer's state of mind and not necessarily to its actions. *See Baty*, 1999 WL 191184, * 10-11 (plaintiff's showing that management did not respond to her complaints despite knowledge of serious problems with harassment, that management conducted a sham investigation to appease plaintiff, and that management employees condoned harassment evinced malice or reckless indifference sufficient to warrant the award of punitive damages).

The evidence at trial showed that prior to Knowlton's complaint, the Teltrust entities' management was well aware of Neihart's inappropriate interaction with female co-workers.[11]  Jolynn Curtis-Leach testified that prior to firing her, Neihart pinned her up against a wall and made a sexual advance. Curtis-Leach spoke with Mickey Adams-Grames, then-CFO and Vice President of Teltrust, Inc., about Neihart's harassment.  According to Curtis-Leach, the harassment stopped for a while but reoccurred when Adams-Grames was terminated from Teltrust, Inc in March 1991.

Adams-Grames testified that in the fall of 1990, she had spoken with Keys, Romney, and other members of management several times about Neihart's inappropriate behavior, including the Curtis-Leach incident.  Romney, President of the three companies, responded by stating: "[Jolynn's] overreacting.  She's too emotional.  The women in this company are always too emotional."  According to

_____

[11]Teltrust Phones argues that some of the testimony relied upon by Knowlton predates § 1981a(b)(1)'s adoption on November 21, 1991, and consequently cannot be used pursuant to *Landgraf v. USI Film Products*, 511 U.S. 244 (1994) (holding that punitive damages provided under the Civil Rights Act of 1991 may not be retroactively recoverable).  Teltrust Phones' argument, however, is unavailing.  Testimony elicited from witnesses about Neihart's inappropriate conduct predating November 21, 1991, does not form the basis of Knowlton's claim.  Rather, the testimony showed that the management of Teltrust was well aware of Neihart's propensity to harass women as of November 22, 1991, one year before Knowlton complained that Neihart sexually harassed her.  *See also Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1349 (7th Cir. 1995) (holding that *Landgraf* does not prohibit the jury from hearing about pre-Act conduct which provides context and background).

Adams-Grames, "the complaints about the behavior of the men in the company were almost at the point of being ridiculous." This "rampant" behavior included telling dirty jokes, using dirty language, and yelling at female employees. Hostility to women appeared not to be limited to Neihart. Upon joining Teltrust, Inc., Romney told Adams-Grames that "no fucking woman will ever tell me how to run my business."

Richard Heath, general manager of Teltrust Phones and Neihart's immediate supervisor, spoke with Romney and Keys about Neihart's inappropriate behavior prior to Knowlton's complaint. Heath testified that on a "few dozen" occasions he heard Neihart use foul language and make comments containing sexual references to fellow coworkers. Neihart's use of foul language included an incident in which he said to a female coworker that she should give some clients a "blow job." When Heath learned about the incident, he chastised Neihart, "Shame on you. That's very inappropriate." Even though he was concerned that Neihart's language would offend some employees, Heath never formally reprimanded Neihart. At trial, Heath agreed with the statement that "when [Knowlton's] complaint came up, [Keys and Romney] had already been put on notice that Mr. Neihart had a problem with his conduct in the office."

Upon hearing about Knowlton's allegations of sexual harassment on September 12, 1992, Keys immediately discharged Neihart from Teltrust.

Romney, however, effectuated his plan to hire Neihart for TCSI the same day. In his new position with TCSI, located just one floor above Teltrust Phones, Neihart was given a larger office and an $8,000 raise.

Although Neihart was moved upstairs, Knowlton had frequent need to go there. Knowlton informed Keys that she was concerned about her continued contact with Neihart and her consequent fears for her safety. In addition to the pattern of behavior exhibited by Neihart during their working relationship, Knowlton feared further contact with Neihart as a result of his retaliatory threats that he would "get even" with her. Keys' response to her concern about continuing contact with Neihart was simply that he was "very disappointed to . . . be advised [she was] apparently still unsatisfied with the actions . . . taken in response to [her] allegations."

This evidence would support a finding that prior to Knowlton's complaint, the management of Teltrust, Inc. was unmistakably aware that the environment at the three Teltrust entities, and specifically Neihart's behavior, was rife with foul language, sexual innuendo, and sexual advances which could reasonably be labeled as sexual harassment. Moreover, the management's reaction to Knowlton's complaint was unresponsive because she was assured continued contact with Neihart. Accordingly, the district court erred when it ruled that there was no evidence from which a jury could make a reasonable inference that

-20-

Teltrust acted recklessly and with disregard for Knowlton's federally protected civil rights.

## VI. CONCLUSION

The district court's order granting Teltrust Phones' motion for a directed verdict is **REVERSED**, and **REMANDED** for the specific purpose of submitting to a jury the issue of punitive damages.[12] This court **AFFIRMS** in all other respects.

---

[12]We note that the first jury determined that the Teltrust entities, as a single employer, employed 200 employees during the relevant time. The jury awarded Knowlton $75,000, leaving the next jury with the option to award Knowlton up to $25,000, if any, in punitive damages. *See* 42 U.S.C. § 1981a(3)(b) (establishing compensatory and punitive damages award limit at $100,000 for companies with more than 100 but less than 201 employees).