**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 24 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

THOMAS F. BRODERICK, doing
business as Advisory Group,

       Plaintiff-Appellee,

v.

BRUCE KEELER,

       Defendant-Appellant.

No. 00-6198
(D.C. No. CIV-99-820-L)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA**, Chief Judge, **SEYMOUR**, Circuit Judge, and **BRORBY**, Senior
Circuit Judge.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant seeks review of a district court judgment on a jury verdict in favor of plaintiff on a breach of contract action based on diversity of citizenship, brought under 28 U.S.C. § 1332. We affirm.

Although the parties disagree about certain facts, the basis of this action was an agreement (Agreement) entered into respecting the obtaining of financing to enable defendant to acquire a business or businesses known as Bradford Trucking. Aplt. App. at 32. The Agreement is essentially a finder's fee agreement providing for a commission payable to plaintiff Broderick (d/b/a "Advisory Group"), an attorney who also helped clients arrange financing to purchase businesses, for the use of his contacts in obtaining the necessary financing. Defendant contended that the initial purchase contract (June 1995 purchase contract) for Bradford Trucking, drafted at about the same time as the Agreement, was in fact never consummated and therefore the Agreement never became effective. Instead, defendant claimed he obtained the loan to purchase Bradford Trucking from a lender who had no connection to plaintiff, and thus plaintiff was not instrumental in arranging the financing. The actual purchase of Bradford Trucking occurred pursuant to a November 1995 purchase agreement, id. at 55-68, after defendant had advised plaintiff that the June purchase agreement had fallen through. Id. at 73, 76.

Defendant also claimed that plaintiff had failed to satisfy the minimum jurisdictional prerequisite of establishing a damage claim above the $75,000 threshold amount. See 28 U.S.C. § 1332(a). To this end, he filed a motion to dismiss, which the district court denied. Following a jury trial, plaintiff was awarded a commission under the Agreement in the amount of $45,000. The jury also determined that plaintiff is entitled to convert the commission into 20% of Bradford Trucking when the lien on the stock to the seller has been released. Aplt. App. at 30.

On appeal defendant continues to maintain that the district court lacked jurisdiction because the amount in controversy was less than the required statutory threshold. He also contends that the jury's verdict lacked evidentiary support because the June 1995 initial purchase contract was not consummated, the lender's lack of connection to plaintiff made it impossible for plaintiff to have been instrumental in obtaining financing, and even if the contract agreement was effective, the prerequisites for plaintiff obtaining the commission have not (and will not) happen. Aplt. Opening Br. at 10-14.

The Agreement recites that plaintiff's efforts have developed contacts with significant financial value which defendant wished to use for its ventures. Defendant had also located a company and requested plaintiff's assistance in facilitating additional funds, for which defendant sought to fairly and adequately

compensate plaintiff for the use of its contacts.  The Agreement then provides in operative part:

> NOW THEREFORE, in consideration of the mutual covenants and conditions contained herein, Keeler shall pay, and Advisory shall receive as consideration for this agreement, the cash equivalent of one and one-half percent (1 1/2%) of the amount which an institution shall finance.  Said one and one-half (1 1/2%) commission shall be payable when Keeler has received any funds which Keeler has paid prior to closing and will be rebated at closing or after closing to Keeler.  It is further agreed and understood that the company will pledge as collateral the stock of the company to be purchased.  When the lien on stock has been released at that point and time Advisory shall have the right to purchase twenty percent (20%) of the stock of any company which Keeler purchases in lieu of the one and one-half (1 1/2%) commission within one (1) year after closing.  It is futher [sic] agreed and understood that Advisory shall receive an additional twenty percent (20%) in the event the company should warrant pursuing a public offering after the one (1) year period should Advisory provide structure and institution resources.

Aplt. App. at 32.

In his motion to dismiss defendant claimed that even if plaintiff were entitled to a 1 1/2% commission on the alleged financing obtained of $3,300,000, plaintiff would be entitled to no more than $49,500.      Id. at 12.  Defendant further claimed that the lien on the stock has not been released;  thus the alternative stock option provisions of the Agreement were inapplicable, and consequently plaintiff failed to allege an amount in controversy of $75,000.      Id.  Plaintiff responded, asserting that the object of the action was 20% of the stock of Bradford Trucking (in accordance with the alternatives available under the Agreement), the estimated

-4-

value of which he alleged to be $600,000.  Id. at 18-19.  Plaintiff further asserted

that the parties disputed the terms of the Agreement governing when plaintiff

could properly convert his commission into the stock option, with plaintiff

contending he could do so once the original lien had been repaid and defendant

claiming that although the purchase money loan has been moved from the original

lender to a subsequent lender, the stock remains pledged and the lien has not been

released.  Id. at 20-21.  Defendant did not dispute that 20% of the Bradford

Trucking stock exceeds $75,000.

As to the jurisdictional amount, the district court applied the proper review

standard as enunciated by the Supreme Court in St. Paul Mercury Indemnity Co.

v. Red Cab Co. , 303 U.S. 283, 288-89 (1938), which is that

> [U]nless the law gives a different rule, the sum claimed by the
> plaintiff controls if the claim is apparently made in good faith.  It
> must appear to a legal certainty that the claim is really for less than
> the jurisdictional amount to justify dismissal.  The inability of
> plaintiff to recover an amount adequate to give the court jurisdiction
> does not show his bad faith or oust the jurisdiction.  Nor does the
> fact that the complaint discloses the existence of a valid defense to
> the claim.  But if, from the face of the pleadings, it is apparent to a
> legal certainty, that the plaintiff cannot recover the amount claimed,
> or if, from the proofs, the court is satisfied to a like certainty that the
> plaintiff never was entitled to recover that amount, and that his claim
> was therefore colorable for the purpose of conferring jurisdiction, the
> suit will be dismissed.

(footnotes omitted).

-5-

Upon de novo review, Watson v. Blankinship, 20 F.3d 383, 386 (10th Cir. 1994), it is apparent that there was no bad faith demonstrated by plaintiff's estimate of the value of the stock. "[T]he amount in controversy requirement is determined at the time the complaint is filed." Id. at 387. Just because the jury does not find that "plaintiff is entitled to the required amount does not necessarily destroy jurisdiction or prove that the plaintiff acted in bad faith." Id. The test for determining the amount in controversy "is not the amount ultimately found due." Gibson v. Jeffers, 478 F.2d 216, 220 (10th Cir. 1973). We conclude the district court properly determined it had jurisdiction over the action.

Defendant also challenges the jury's verdict as not supported by competent evidence. We review a jury verdict by determining whether the record, viewed in a light most favorable to the prevailing party, "contains substantial evidence to support the jury's decision." Knowlton v. Teltrust Phones, Inc., 189 F.3d 1177, 1183 (10th Cir. 1999). "Because the jury 'has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact,' this standard of review is quite deferential to the jury's verdict." Id. (quoting Kitchens v. Bryan County Nat'l Bank, 825 F.2d 248, 251 (10th Cir. 1987)).

Defendant argues that under Okla. Stat. tit. 15, § 158 ("[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together"), the precise terms of the June 1995 sales agreement between defendant and the owner of Bradford Trucking were required to be consummated in order for plaintiff to be entitled to a commission under the Agreement. This argument fails for the simple and obvious reason that the purchase agreement was to be between defendant and the seller of Bradford Trucking, which in no way involved plaintiff. The Agreement between plaintiff and defendant contains only the statement that defendant had located a company and wished to involve plaintiff in securing additional funding. Although the two agreements may have involved the same matters, they were clearly not between the same parties. Finally, defendant specifically acknowledged in testimony that nothing in the Agreement expressly conditioned plaintiff's commission on the closing of defendant's June 1995 agreement to purchase Bradford Trucking. Aplee. Supp. App. at 128-29. Plaintiff also testified that he had performed all the required conditions under the Agreement. These are factual issues properly resolved by the jury.

Next, defendant argues that the ultimate lender had never met nor heard of plaintiff and therefore plaintiff could not have been instrumental in obtaining financing for defendant. Again defendant misapprehends both the terms of the

Agreement and the law. The Agreement is in the nature of a finder's fee agreement, which is "an arrangement by which an intermediary finds, introduces, and brings together parties to a business opportunity, leaving the ultimate negotiation and consummation of the business transactions to the principals." Equity Benefit Life Ins. Co. v. Trent, 566 P.2d 449, 453-54 (Okla. 1977) (citation omitted). In his testimony, defendant admitted that the Agreement was a finder's fee agreement for which defendant was to compensate plaintiff for finding a loan. Aplee. Supp. App. at 157. In this case the evidence showed that plaintiff contacted a friend and associate, Joe Consigli, a stock broker and investment banker, who ultimately contacted the lender. Consigli testified that he had, at defendant's request, contacted a Mr. Warren Jeffers, a business development officer, whose company eventually provided financing to defendant. Id. at 80-84; Jeffers confirmed that he was contacted by Consigli regarding the Bradford Trucking opportunity. Id. at 44-45; 70. Defendant testified that the Agreement required the obtaining of financing through plaintiff "or his associates," id. at 106, which defendant thought was more than one person. Id. In particular, defendant thought that Consigli would be handling the public offering, had one been done. Id. at 107. Thus, there was ample evidence before the jury to support the determination that plaintiff, acting through contacts which included Consigli,

-8-

had lead defendant to Jeffers and ultimately financing to purchase Bradford Trucking.

Finally, defendant claims that the commission allegedly due plaintiff is to be payable when defendant has received any funds defendant paid prior to the closing, which funds "will be rebated at closing or after closing to defendant." Aplt. App. at 32, and that he has never received these funds. Id. at 88-89. However, at trial defendant's only basis for claiming plaintiff was not entitled to the commission specified in the Agreement was that plaintiff had failed to raise one hundred percent of the financing, Aplee. Supp. App. at 99-101; 156, and defendant's view that it was the closing of the June 1995 purchase contract that would have triggered plaintiff's right to the commission. Id. at 147-48.

The Agreement itself did not specify what funds defendant was to recover. Moreover, defendant acknowledged that he was credited for the $30,000 commitment fee against the first loan installment. Aplt. App. at 130-31. It was within the province of the jury to assess defendant's credibility with respect to his

interpretation of the Agreement and deciding whether or not that interpretation was reasonable. We conclude there was substantial evidence to support the jury's verdict.

AFFIRMED.

Entered for the Court


Wade Brorby
Senior Circuit Judge